AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Jan 30, 2023

OFFICE OF THE CLERK

# UNITED STATES DISTRICT COURT
## for the
### Western District of Arkansas
### Texarkana Division

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF CONTENT AND INFORMATION ASSOCIATED WITH THE INSTAGRAM USER ACCOUNT IDENTIFIED BY THE USERNAME 'kecefrmsix00' WHICH IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | No. ___4:23-cm-08___ <br><br> **Filed Under Seal** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe property to be searched and give its location):*

**See "Attachment A."**

located in the Northern District of California, there is now concealed *(identify the person or describe the property to be seized):*

**See "Attachment B." This Court has authority to issue the requested search warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A), and Federal Rule of Criminal Procedure 41.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

[ x ] evidence of a crime;
[ ] contraband, fruits of crime, or other items illegally possessed;
[ x ] property designed for use, intended for use, or used in committing a crime;
[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to violations, in the Western District of Arkansas, of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 5861(d) | Receipt or possession of an unregistered firearm |

The application is based on these facts: (See attached affidavit of SA Michael Trey Schmitt, FBI)

[ x ] Continued on the attached sheet.

[ ] Delayed notice of __ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

(Appearing by telephone conference call at 415-527-5035)
SA Michael Trey Schmitt, Federal Bureau of Investigation
*Affiant*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1, by appearing via telephone conference call at 415-527-5035.

Date: __1-30-23__

_____
*Judge's signature*

City and state: __Texarkana, AR__

Hon. Barry A. Bryant, United States Magistrate Judge, W. D. Ark.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | ) | |
| CONTENT AND INFORMATION ASSOCIATED | ) | |
| WITH THE INSTAGRAM USER ACCOUNT | ) | No. _____4-23-cm-08_____ |
| IDENTIFIED BY THE UNIQUE USERNAME | ) | |
| 'kecefrmsix00' WHICH IS STORED AT | ) | **FILED UNDER SEAL** |
| PREMISES CONTROLLED BY META | ) | |
| PLATFORMS, INC. | ) | |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Michael Trey Schmitt, a Special Agent with the Federal Bureau of Investigation (FBI),

being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI), and have

been since 2021.  Prior to that, I worked in collegiate Christian ministry for Campus Crusade for

Christ in Lafayette, Louisiana.  I attended Texas State University, in San Marcos, Texas, and

obtained a Bachelor of Science degree in Recreation Administration.  Since my hiring and

training as a Special Agent with the FBI, I have been assigned to the Bureau's Little Rock

Division, and specifically to the Texarkana Resident Agency (R.A.).  My responsibilities as a

Special Agent at the Texarkana R.A. include overseeing and conducting federal criminal

investigations relating to, among other things, violations of Title 26, United States Code, Section

5861(d).

2.      I make this affidavit in support of an application for a warrant to search and seize

certain information associated with an "Instagram" social media user account identified by the

unique user name "kecefrmsix00", which account is further described in Attachment A hereto,

(hereinafter the "SUBJECT ACCOUNT"). The information to be searched and seized is stored at premises controlled by the operator of the "Instagram" online service, a social-media company called Meta Platforms, Inc., headquartered at 1601 Willow Road, Menlo Park, CA 94025, in the Northern District of California. The information to be searched is described in the below paragraphs, and in Attachment A hereto. The requested search warrant would require Meta Platforms, Inc., to disclose to the government copies of the information (including the content of communications) described in Section I of Attachment B hereto. Government-authorized persons would then review that information to locate and seize the items described in Section II of Attachment B.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

4.      The facts and statements contained in this affidavit are based in part on: my own investigation of this matter; directly or indirectly, from other law enforcement agents; a subject interview, and my experience, training and background as a Special Agent with the FBI. Because this affidavit is being submitted for the limited purpose of securing authorization for the requested search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence and/or instrumentalities of violations of Title 26, United States Code, Section 5861(d) (receipt or possession of an unregistered firearm) is presently located in information associated with the SUBJECT ACCOUNT. This Affidavit and Application for Search Warrant seek authorization solely to search information associated with

the SUBJECT ACCOUNT described in Attachment A.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A).  Specifically, the Court of the Western District of Arkansas is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## APPLICABLE LAW

6.      Title 26, United States Code, Section 5861(d) criminalizes the knowing receipt or possession of a "firearm" not registered to the receiver or possessor in the National Firearms Registration and Transfer Record.  The same statute also prohibits transferring a "firearm" in violation of the provisions of Chapter 53 of Title 26 of the United States Code.  See 26 U.S.C. § 5861(e).

7.      For purposes of 26 U.S.C. § 5861, the term "firearm" includes a "machinegun." 26 U.S.C. § 5845(a)(6).  A "machinegun" is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger.  The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person."  26 U.S.C. § 5845(b).

## THE CRIMINAL INVESTIGATION

8.      The United States, to include the FBI, is conducting a criminal investigation of

ZION FRICKS regarding the commission of the subject offense which occurred in the Western

District of Arkansas.

9.      On or about October 5, 2022, at approximately 5:30 PM, Texarkana Arkansas

Police Department (TAPD) Officers responded to a "shots fired" call at 3621 Bann Avenue,

Texarkana, Arkansas (AR).

10.     Upon arrival, officers began rendering aid to the victim, who had been shot in the

back and was lying face down on the floor of the garage within the residence located at the listed

address.

11.     TAPD Officers secured the scene and began conducting an investigation.  At

some point thereafter, FRICKS was located in the front passenger's seat of a silver vehicle

located at or near the subject residence.  TAPD Officers confirmed that an active state felony

arrest warrant had been issued for FRICKS' arrest and he was subsequently arrested and taken

into custody by TAPD Officers.

12.     Following FRICKS' arrest, officers searched the vehicle in which FRICKS had

been found seated and found two (2) firearms in the passenger compartment of the vehicle.

Specifically, TAPD Officers located and seized a Glock, Model 23, 9 mm caliber handgun,

Serial Number BXVG710, and a Glock, Model 17, 9 mm caliber handgun, Serial Number

BWRC738 (hereinafter referred to as the "SUBJECT FIREARM").

13.     Since its seizure by TAPD, I have personally inspected the SUBJECT FIREARM.

In so doing, I found it to be modified by the installation of a device I and other FBI agents

recognize, from training and experience, as a so-called "switch." A "switch" (often referred to as

a "Glock switch" due to prevailing use with handguns made by Glock Ges.m.b.H., an Austrian arms manufacturer) is a small device which mounts to the rear of a semi-automatic handgun's slide, enabling automatic fire. In other words, a "switch" allows a compatible handgun on which it is installed to "shoot automatically more than one shot, without manual reloading, by a single function of the trigger." As such, an installed "switch" converts a compatible semi-automatic handgun into a "machinegun" within the meaning of 26 U.S.C. § 5845(b). I also know from training and experience, and from speaking with other investigators trained and experienced in such matters, that a "switch" not currently installed on any handgun is nonetheless a "part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon" into a machinegun. As a result, I know that even an *uninstalled* "switch" is a "machinegun", and therefore a "firearm" subject to the provisions of 26 U.S.C. § 5861. See 26 U.S.C. § 5845(a)(6) and (b).

14.     During the course of the investigation, witness interviews were conducted. One eyewitness stated the FRICKS was in possession of two (2) firearms at the time the victim was shot, and that at least one (1) of the firearms had been converted to be "fully automatic."

15.     Following the shooting, FRICKS was read his *Miranda* rights and subsequently waived those and agreed to be interviewed by a TAPD detective. In that interview, FRICKS stated, in substance, the following:

    a.   That both firearms located and seized from the above-referenced vehicle on October 5, 2022, belonged to FRICKS, including the SUBJECT FIREARM;

    b.   That, approximately three days prior to the October 5 shooting incident, FRICKS traded an 'AR'-style pistol to an unknown man in El Dorado, Arkansas, in exchange for the SUBJECT FIREARM.

    c.   That, when FRICKS received the SUBJECT FIREAM from the unknown man in El Dorado, the SUBJECT FIREARM already had a "switch" on it, which made the weapon fully-automatic;

    d.   That, approximately three (3) days prior to the above-described shooting incident, FRICKS and the unknown man in El Dorado had communicated using their respective Instagram accounts regarding FRICKS' acquisition of the SUBJECT FIREARM.

    e.   That the SUBJECT ACCOUNT is the Instagram account that FRICKS used to communicate with that unknown man in El Dorado, from whom he received the SUBJECT FIREARM and "switch."

16.    During the above-described interview, investigators accessed publicly visible portions of the SUBJECT ACCOUNT on Instagram, and FRICKS confirmed the SUBJECT ACCOUNT is his.

17.    When I personally inspected the SUBJECT FIREARM and the "switch" installed on it, I was unable to locate any serial number or other unique identifying information on the "switch". I later contacted Special Agent Edwin Starr of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), which is the federal agency responsible for maintaining the National Firearms Registration and Transfer Record. Special Agent Starr advised me that, in his training and experience, a "firearm" (including a "switch") which does not bear a serial number or other similar unique identifying information *cannot* be registered in the National Firearms Registration and Transfer Record. I therefore have probable cause to believe that Zion FRICKS received and possessed the "switch" ("firearm") installed on the SUBJECT FIREARM at a time when it was *not* registered to him in the National Firearms Registration and Transfer Record, as

required by law.  I also have probable cause to believe that the unidentified El Dorado man who sold the "switch" ("firearm") to FRICKS also possessed the "switch" at a time when it was not registered to *him* in the National Firearms Registration and Transfer Record.

## BACKGROUND REGARDING INSTAGRAM

18.     Based on my training and experience and what I have learned through other sources, I know the following:

a)     Meta Platforms, Inc. (hereinafter "Meta Platforms") is a company headquartered in Menlo Park, California, which is in the Northern District of California. Among other things, Meta Platforms owns and operates "Instagram", a free-access social-networking service that can be accessed online at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information.  Users can access Instagram through the Instagram website, or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

b)     Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user may add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on

posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos.

c)    Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

d)    Instagram asks users to provide basic identity and contact information upon registration and allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram.  Once an account is created, users may also adjust various privacy and account settings for the account on Instagram.  Instagram collects and maintains this information.

e)    Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public.  Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles.  Instagram collects and maintains this information.

f)    Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user.  Users may also "unfollow" users, that is, stop following them or block them, which prevents the blocked user from following that user.

g)      Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials.  Instagram collects and maintains user content that users post to Instagram or share through Instagram.

h)      Instagram users may send photos and videos to select individuals or groups via Instagram Direct.  Information sent via Instagram Direct does not appear in a user's feed, search history, or profile, but is commonly retained by Instagram for some time, after being sent or received by users.

i)      Users on Instagram may also search Instagram for other users or particular types of photos or other content.

j)      For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app.  Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

k)      Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram.  For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

l)      Instagram also collects information on the particular devices used to access Instagram.   In particular, Instagram may record "device identifiers," which

includes data files and other information that may identify the particular electronic device that was used to access Instagram.

m)    Instagram also collects other data associated with user content.    For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

n)    Instagram also may communicate with the user, by email or otherwise. Instagram collects and maintains copies of communications between Instagram and the user.

o)    As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element of a crime, or alternatively, to exclude the innocent from further suspicion.    In my training and experience, an Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account.    This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.    For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time and/or location.    Instagram account activity can show how and when the account was accessed or used.    For example, as described herein, Instagram logs the Internet Protocol ("IP") addresses from which users access their accounts along

with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Instagram account activity may also provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

p)      Based on the information above, the computers Instagram uses to capture and store this information are likely to contain all the material described above with respect to the SUBJECT ACCOUNT, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

19.     On October 7, 2022, pursuant to 18 U.S.C. § 2703(f), I submitted a written request to Meta Platforms, Inc., asking it to preserve information associated with the SUBJECT

ACCOUNT for 90 days.  In early January 2023, prior to the expiration of that initial period, I sent a second written request to Meta Platforms, Inc., asking it to preserve the same information for an additional 90 days, through early March 2023.

## PRIOR SEARCH WARRANTS

20.     This Court issued two earlier search warrants (on December 16, 2022, in case number 4:22-CM-21, and on January 5, 2023, in case number 4:23-CM-1) authorizing the seizure and search of essentially the same information and materials described in Attachments A and B hereto.  Meta Platforms, Inc., declined to comply with the first warrant (4:22-CM-21) due to a discrepancy between the dates of signature on the warrant and the accompanying non-disclosure order.  As a result, nothing responsive to that first warrant was made available to, or seized or searched by, the government, and that warrant was returned, effectively unexecuted, on January 4, 2023.  Thereafter, on January 5, 2023, a second warrant (4:23-CM-1) was issued for the same information and materials.  That second warrant was served on Meta Platforms, Inc., on January 6, 2023.  On January 22, 2023—after the expiration of the second warrant's January 19 execution deadline—the FBI received notice that Meta Platforms, Inc., is prepared to produce the information and materials required by the second warrant.  As of the date of this affidavit, the government has not taken possession of, or received, those items, nor has it made any attempt to do so.  In consideration of dicta in the Eighth Circuit's *United States v. Nyah* opinion (928 F.3d 694, 700 (8th Cir. 2019)), the government instead returned the second search warrant unexecuted on January 23, 2023.  The government now seeks to secure the evidence described in Attachments A and B via a new (third) search warrant.  The government will not take possession of the materials described in Attachments A and B unless and until the Court grants the new search warrant now sought, and will receive and search them only after that new warrant has

been served upon Meta Platforms, Inc.  This affidavit is thus presented in support of an application for a third search warrant, authorizing the seizure and search of essentially the same data/materials originally sought, but never seized or searched, via the two prior warrants.

### CONCLUSION

21.    Therefore, I respectfully request this Court to issue a search warrant authorizing the examination of information associated with the SUBJECT ACCOUNT stored at any premises controlled by Meta Platforms, Inc., a social networking provider headquartered at 1601 Willow Road, Menlo Park, CA 94025, in the Northern District of California, as described in Attachment A, and further authorizing the seizure the items described in Attachment B, which individually or collectively constitute evidence and/or instrumentalities of violations of Title 26, United States Code, Section 5861(d) (receipt or possession of an unregistered firearm).

Respectfully submitted,

(Appearing by telephone conference call at 415-527-5035)
Michael Trey Schmitt
Special Agent
Federal Bureau of Investigation

Attested to by the affiant in accordance with the requirements of Fed. R. Crim. P. 4.1, by appearing via telephone conference call at 415-527-5035 on this 30th day of _____January_____, 2023.

HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This search warrant applies to information associated with the Instagram user account associated with the unique user name "**kecefrmsix00**" stored at any premises controlled by Meta Platforms, Inc., a social networking provider headquartered at 1601 Willow Road, Menlo Park, CA 94025, in the Northern District of California.

### ATTACHMENT B

### Particular Things to be Seized

**I. Information to be disclosed by Meta Platforms, Inc.**

To the extent that any and all information in Attachment A is within the possession, custody, or control of Meta Platforms, Inc., including any messages, records, files, logs, or information that may have been deleted by a user but are still available to Meta Platforms, Inc., or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta Platforms, Inc. is required to disclose the following information to the government for the account listed in Attachment A (hereinafter the "SUBJECT ACCOUNT"):

(a) All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

(b) All past and current usernames associated with the SUBJECT ACCOUNT;

(c) The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

(d) All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the SUBJECT ACCOUNT, as well as any other log file information;

(e) All information regarding the particular device or devices used to login to or access the SUBJECT ACCOUNT, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

(f) All data and information associated with the SUBJECT ACCOUNT's profile page, including photographs, "bios," and profile backgrounds and themes;

(g) The content of all communications, including direct or private messages, sent or received by the SUBJECT ACCOUNT **between September 1, 2022, and January 22, 2023**, and the usernames and other identifiers for all Instagram accounts to or from which those communications were sent.

(h) All user content created, uploaded, or shared by the SUBJECT ACCOUNT **between September 1, 2022, and January 22, 2023**, including any comments made by the account on photographs or other content;

(i) All photographs and images in the user gallery for the account **between September 1, 2022, and January 22, 2023**;

(j) All location data associated with the account **between September 1, 2022, and January 22, 2023**, including geotags, log files, dates, and times;

(k) All data and information that has been deleted by the user **between September 1, 2022, and January 22, 2023**;

(l) A list of all of the people that the user follows on Instagram and all people who are following the user (i.e., the user's "following" list and "followers" list), as well as any friends of the user;

(m) A list of all users that the account has "unfollowed" or blocked;

(n) All privacy and account settings;

(o) All records of Instagram searches performed by the account **between September 1, 2022, and January 22, 2023**, including searches saved by the account;

(p) All information about connections between the account and third-party websites and applications; and,

(q) All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

## II.    Information to be seized by the government

The government is authorized to seize only information described in Section I that constitutes evidence and/or instrumentalities of violations of Title 26, United States Code, Section 5861(d) (receipt or possession of an unregistered firearm) from the period of September 2022 to the date this warrant is signed; including information pertaining to the following matters:

(a) Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the identity of the Instagram account owner;

(b) Evidence indicating the Instagram account owner's state of mind as it relates to the crime under investigation; and

(c) The identity of the person(s) who created or used the user ID, including records that help reveal the location of such person(s), including log files, dates, times, and IP addresses.

(d) Data, information or evidence tending in any way to identify any user(s) or person(s) who communicated with the SUBJECT ACCOUNT about matters relating to violations of Title 26, United States Code, Section 5861(d) (receipt or possession of an unregistered firearm), including records that help reveal their identities and/or whereabouts.